IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TAMMY RENEE SCOTT,                              No. 3:13-cv-00502-HZ

                    Plaintiff,                     OPINION & ORDER

      v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                    Defendant.

Lisa R.J. Porter
16200 SW Pacific Hwy, Suite H-280
Portland, OR 97224

        Attorney for Plaintiff

S. Amanda Marshall
U.S. Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97201-2902

/ / /

/ / /

1 - OPINION & ORDER

Heather L. Griffith
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

     Attorneys for Defendant

HERNANDEZ, District Judge:

     Plaintiff Tammy Renee Scott brings this action for judicial review of the Commissioner's final decision denying her application for Supplemental Security Income under Title XVI of the Social Security Act and for Disability Insurance Benefits under Title II of the Social Security Act. I have jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). For the following reasons, I reverse the Commissioner's decision and remand for additional proceedings.

## BACKGROUND

     Plaintiff was born in 1966 and was 40 years old at the alleged onset of disability. Tr. 222. She completed a General Educational Development (GED) test and some college and reports past work as a caregiver and cashier. Tr. 63, 262, 267. Plaintiff alleged disability since March 31, 2006 due to cervical cancer, chronic obstructive pulmonary disease, post-traumatic stress syndrome (PTSD), memory problems, myocardial problems, high blood pressure, urinary problems, two previous heart attacks, hearing problems, leg problems, migraines, cramping pain, anxiety attacks, panic attacks, and depression. Tr. 94, 261.

     The Commissioner denied her application initially and upon reconsideration, and an Administrative Law Judge ("ALJ") held a hearing on July 8, 2011. Tr. 38-90, 131-40, 144-50. The ALJ held a supplemental hearing on October 5, 2011. Tr. 91-115. The ALJ found Plaintiff

not disabled on October 21, 2011.  Tr. 18-31.  The Appeals Council denied review of the matter

on January 23, 2013, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-3.

SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which . . . has lasted or can be

expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated according to a five-step procedure.  See Valentine v.

Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, the agency uses a five-step

procedure to determine disability).  The claimant bears the ultimate burden of proving disability.

Id.

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity."  If so, the claimant is not disabled.  Bowen v. Yuckert, 482 U.S.

137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner

determines whether the claimant has a "medically severe impairment or combination of

impairments."  Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the

claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one

of a number of listed impairments that the [Commissioner] acknowledges are so severe as to

preclude substantial gainful activity."  Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d),

416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the Commissioner

proceeds to step four.  Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work."  20

C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can, the claimant is not disabled.  If the

claimant cannot perform past relevant work, the burden shifts to the Commissioner.  In step five,

the Commissioner must establish that the claimant can perform other work.  Yuckert, 482 U.S. at

141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his

burden and proves that the claimant is able to perform other work which exists in the national

economy, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity since her alleged onset date through her date of last insured.  Tr. 23.  At step two, the

ALJ found Plaintiff's uterine cancer, chronic pain, depressive disorder, and amphetamine

dependence (in remission) to be "severe" impairments.  Id.  At step three, the ALJ found that the

impairments, singly or in combination, did not meet or equal a listed impairment.  Tr. 24.  The

ALJ assessed Plaintiff's RFC and concluded that she could perform "light work as defined in 20

CFR 404.1567(b) and 416.967(b) except: occasionally climb, stoop, crouch, crawl, and kneel; no

concentrated exposure to noxious fumes and odors; perform only simple, entry level work; and

occasional public interaction."  Tr. 25.  At step four, the ALJ found that Plaintiff was unable to

perform any past relevant work.  Tr. 30.  At step five, the ALJ found there were jobs existing in

the national economy in sufficient numbers that Plaintiff can perform.  Id.  The ALJ therefore

found Plaintiff not disabled.  Tr. 31.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner

applied proper legal standards and the findings are supported by substantial evidence in the

record.  42 U.S.C. § 405(g); Batson v. Comm'r, 359 F.3d 1190, 1193 (9th Cir. 2004).

"Substantial evidence" means "more than a mere scintilla, but less than preponderance." Bray v. Comm'r, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Id.; see also Batson, 359 F.3d at 1193. However, this court cannot now rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. Bray, 554 F.3d at 1225-26 (citing Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947)); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (citing same).

DISCUSSION

Plaintiff argues that the ALJ made the following errors: 1) improperly found that Plaintiff was not credible; 2) improperly discounted lay witness testimony; 3) improperly evaluated medical testimony; 4) failed to properly discuss Plaintiff's activities of daily living ("ADLs"); and 5) presented an invalid hypothetical to the vocational expert ("VE").

I. Plaintiff's Credibility

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "have limited credibility." Tr. 26, 27. The ALJ is responsible for determining credibility. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). Once a

claimant shows an underlying impairment and a causal relationship between the impairment and

some level of symptoms, clear and convincing reasons are needed to reject a claimant's

testimony if there is no evidence of malingering.  Carmickle v. Comm'r, 533 F.3d 1155, 1160

(9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record

includes objective medical evidence establishing that the claimant suffers from an impairment

that could reasonably produce the symptoms of which he complains, an adverse credibility

finding must be based on clear and convincing reasons") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations,

the ALJ may properly consider several factors, including the plaintiff's daily activities,

inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and

relevant character evidence.  Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).  The ALJ may

also consider the ability to perform household chores, the lack of any side effects from

prescribed medications, and the unexplained absence of treatment for excessive pain.  Id.

In his opinion, the ALJ gave a number of reasons for his credibility determination

including: 1) Plaintiff's inconsistent statements; 2) Plaintiff's noncompliance with prescribed

medication; and 3) the lack of objective medical evidence to support Plaintiff's allegations.  Tr.

27-28.  Plaintiff argues that the ALJ erred by basing his credibility determination on his "belief"

that "Plaintiff's pain is out of proportion with the medical evidence."  Pl.'s Opening Br. 26.

Defendant counters that the ALJ properly discounted Plaintiff's subjective complaints.  Def.'s

Br. 6.

A. Inconsistent Statements

The ALJ discounted Plaintiff's credibility because of her inconsistent statements.  Tr. 27

& nn. 1, 2. The ALJ correctly noted that Plaintiff denied having hallucinations and suicidal ideation in a psychological exam conducted by Dr. M. John Givi, Ph.D., on March 25, 2008, yet testified at the July 8, 2011 hearing that she had hallucinations daily and thought about committing suicide once or twice a week. Tr. 57-58, 534. The ALJ correctly noted that Plaintiff told Dr. Andrea Axtell, M.D., during an office visit on July 17, 2007 that she was sexually active with her husband, yet testified at the July 8, 2011 hearing that she had not been able to engage in sex with her husband since 2006. Tr. 61, 455. Thus, the record supports that the ALJ properly considered Plaintiff's contradictory statements in making the credibility determination. See, e.g., Orteza, 50 F.3d at 750; see also SSR 96-7p, 1996 WL 374186, at *5  (July 2, 1996) ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

B. Noncompliance with Medication

The ALJ discounted Plaintiff's credibility because a drug test indicated that she was noncompliant with her pain medication. Tr. 27. "[U]nexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" may support a negative credibility finding. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see also SSR 96-7p, 1996 WL 374186, at *7 ("[An] individual's statements may be less credible if . . . the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."). The record shows that Plaintiff received a 28-day supply of Vicodin on July, 30, 2010. Tr. 696; see also Tr. 702 (July, 30, 2010 Office Visit record in which Dr. Amy Earhart, M.D., noted that Plaintiff was to continue taking Vicodin for pain). However, Plaintiff tested negative for Vicodin on August 5, 2010. Tr. 665.

Plaintiff argues that the ALJ erred in undermining Plaintiff's credibility on the basis of the drug test. Pl.'s Opening Br. 26. Plaintiff maintains that the medical records from the Native American Rehabilitation Association ("NARA") health clinic expressed no concern regarding the negative Vicodin test and provided no indication that Plaintiff was not in pain. Id. Plaintiff further asserts that NARA records document phone calls from Plaintiff's daughter regarding Plaintiff's "inability to walk and non-stop crying from pain." Id. (citing Tr. 716).

Although the record may be capable of more than one interpretation, the ALJ's interpretation of the evidence relevant to his credibility determination was not unreasonable. "[The court] must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) (internal quotation marks and citation omitted). Because the ALJ's interpretation was rational and based on substantial evidence in the record, the ALJ properly considered Plaintiff's failure to comply with prescribed medication when discrediting her statements.

C. Objective Medical Evidence

The ALJ discounted Plaintiff's credibility because the medical record does not support her allegations of disabling limitations. Tr. 27. The ALJ correctly noted that there is little or no objective medical evidence to support Plaintiff's pain allegations. Id. Dr. Axtell noted in a July 17, 2007 report that there is "no visible structural pathology to explain her pain" and on October 10, 2007 stated that the "etiology for [her] pain is unclear" despite "extensive work-up, including CT and MRI, with no visible structural pathology." Tr. 448, 456. Dr. Tara Eagle, M.D., noted on November 11, 2007 that she doubted whether Plaintiff would be "helped by simply increasing her narcotics" because of "the lack of objective data [that treating physicians] have on this pain." Tr. 436. Dr. Paul Tseng, M.D., indicated in May 30, 2008 exam notes that Plaintiff's pain was

"not likely related to her surgery from 2006." Tr. 558. The ALJ correctly noted that Plaintiff's pap tests, CT scans, and MRIs have all been normal. Tr. 27. Dr. Axtell's records on July 17, 2007 and October 10, 2007 state that Plaintiff's CT scans and MRIs have been normal since Plaintiff's hysterectomy. Tr. 447, 456. Dr. Robert Stenger, M.D., stated in an April 24, 2008 report that Plaintiff's pap tests and CT scans were normal and "nothing on examination . . . suggests that there is a surgically correctable cause to her pelvic pain." Tr. 416-18.

Plaintiff contends that the ALJ erred in using the medical record to support his adverse credibility determination. Pl.'s Opening Br. 26. Plaintiff maintains that her testimony of "pain symptoms, impairments, chronic pain and limitations from chronic pain are consistent with and supported by the overall medical evidence of record." Id.; see also Pl.'s Reply Br. 1-2.

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch, 400 F.3d at 680. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Id. at 681. Generally, noting a conflict between a claimant's subjective complaints and the objective medical evidence in the record constitutes a specific and substantial reason for an ALJ to find that claimant not credible. See Morgan v. Comm'r, 169 F.3d 595, 600 (9th Cir. 1999) ("Citing the conflict between [the claimant's] testimony of subjective complaints and the objective medical evidence in the record, and noting the ALJ's personal observations, the ALJ provided specific and substantial reasons that undermined [the claimant's] credibility.").

Here, the ALJ did not discredit Plaintiff's subjective complaints solely on the basis of objective medical evidence. The ALJ provided additional clear and convincing reasons based on

substantial evidence in the record, including Plaintiff's inconsistent statements and her noncompliance with medication.  Therefore, the ALJ properly relied upon objective medical evidence as a factor in making his adverse credibility determination.  See, e.g., Burch, 400 F.3d at 680-81; see also Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ provided clear and convincing reasons in support of his adverse credibility determination and did not err in rejecting Plaintiff's subjective testimony regarding her pain and limitations.

II. Lay Witness Testimony

Plaintiff asserts that the ALJ improperly rejected lay witness testimony provided by her daughter, Linda Fero; her friend, Joyce Kenifick; and her pastor, Reverend Carren Woods.  Pl.'s Opening Br. 27-28.

Lay testimony regarding a claimant's symptoms is competent evidence which the ALJ must take into account.  Stout v. Comm'r, 454 F.3d 1050, 1053 (9th Cir. 2006); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e) (evidence from non-medical sources such as family members, friends, and neighbors, may be used to show the severity of an impairment and how it affects the claimant's ability to work).  It is error for an ALJ to completely fail to comment on lay testimony offered as to symptoms or a claimant's ability to work.  Stout, 454 F.3d at 1053; Van Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (lay testimony concerning the claimant's ability to work "cannot be disregarded without comment").

"If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons that are germane to each witness [and] . . . the reasons germane to each witness must be specific." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (internal quotation marks omitted); see also Regennitter v. Comm'r, 166 F.3d 1294, 1298 (9th Cir. 1999) (holding that an ALJ can reject lay testimony "only by giving specific reasons germane to each witness").  However, in rejecting lay testimony, the ALJ need not "discuss every witness's testimony on a [sic] individualized, witness-by-witness basis.  Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."  Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).  The ALJ found the testimony of all three lay witnesses credible to the extent that their statements were based on personal observations, but rejected their statements concerning the alleged degree of limitation because they were unsupported by the objective medical evidence.  Tr. 29.  The ALJ further rejected some of Woods's testimony concerning Plaintiff's mental health because Woods lacks the requisite qualifications.  Id.

The ALJ correctly rejected Woods's statements made in a mental health questionnaire supplied by Plaintiff's attorney.  Woods holds a masters of divinity degree, not a degree in counseling, psychology, or medicine, and therefore is not qualified to diagnose Plaintiff's impairments.  Tr. 721-28 (June 21, 2011 Mental Impairment Questionnaire in which Woods states that she is "not qualified to diagnose [Plaintiff's] present condition); compare 20 C.F.R. § 404.1513(a)(1)-(5) (stating that "acceptable medical sources" who can provide evidence to establish "medically determinable impairment(s)" include licensed doctors and certain other qualified specialists), with 20 C.F.R. § 404.1513(d)(4) (indicating that clergy qualify as a "non-medical source" who may provide testimony "to show the severity of [claimant's] impairment(s)

and how it affects [claimant's] ability to work").  Lacking the requisite qualifications to offer a professional assessment of Plaintiff's functions is a reason germane to the witness.

District courts in the Ninth Circuit have noted conflicting Ninth Circuit decisions regarding whether lay testimony can be properly rejected because it is unsupported or uncorroborated by objective medical evidence.  Glover v. Astrue, 835 F. Supp. 2d 1003, 1008-09 (D. Or. 2011) (recognizing one line of cases holding that an ALJ may properly reject lay testimony that is inconsistent with or conflicts with the objective medical evidence and another line of cases holding that an ALJ may not properly reject lay testimony because the objective medical evidence does not support or corroborate such testimony) (citing Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence"); Bruce, 557 F.3d at 1116 (holding that an ALJ cannot discredit lay testimony "as not supported by medical evidence in the record")).  Some district courts have reconciled the apparently competing cases by concluding that an ALJ may properly reject lay testimony that conflicts with or is inconsistent with the objective medical evidence, but not when it is unsupported or uncorroborated by such evidence.  E.g., Rivera v. Colvin, No. 6:12-CV-02132-MO, 2013 WL 6002445, at *3 (D. Or. Nov. 12, 2013).

When presented with this issue in Glover, I concluded that an ALJ may reject lay witness testimony when it is inconsistent with or conflicts with the objective medical evidence and when it is unsupported or uncorroborated by the objective medical evidence.  Glover, 835 F. Supp. 2d at 1012.  However, I explained that:

> The sufficiency of the ALJ's rejection of lay witness testimony, regardless of whether the rejection is because the testimony is not supported or corroborated by the objective medical evidence or is because the testimony is inconsistent or conflicts with the objective medical evidence, will depend on the particular case and the thoroughness with which the ALJ conducts and discusses his or her evaluation of the evidence.

Id. at 1013.

The ALJ found the testimony of Fero, Kenifick, and Woods credible to the extent that it was based on personal observations, but noted that treatment records and other objective evidence "do not support the alleged degree of limitation." Tr. 29.   While, in my opinion, an ALJ may reject lay testimony based on lack of support by the objective medical record, there still must be sufficient discussion of that issue.  See Glover, 835 F. Supp. 2d at 1012-13 ("But, this discussion must occur within the parameters otherwise applicable to the evaluation of evidence generally and to the evaluation of lay witness testimony in particular.").  In Glover, as an example of an insufficient, conclusory "discussion," I cited a Western District of Washington case which found that an "ALJ's general reference" to the lay testimony as not consistent with "the bulk of the medical evidence of record" was "too vague to constitute even a germane reason for discounting the statements and comments" of a lay witness.  Id. at 1013 (citing and quoting Edwards v. Astrue, No. C08-5730BHS, 2009 WL 2855730, at *11 (W.D. Wash. Aug. 31, 2009) (internal quotation marks omitted)).  Here, as in Edwards, the reference is too conclusory and vague to be sufficient.

Defendant contends that the ALJ's rejection of the lay witness's testimony is not in error because the reasons that the ALJ gave for properly discounting Plaintiff's testimony apply to similar statements made by the lay witnesses.  Def.'s Br. 10.  In support, Defendant cites Molina, where the Ninth Circuit held that "an ALJ's failure to comment on lay witness testimony is harmless where the 'same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'"  Molina, 674 F.3d at 1122 (quoting Buckner v. Astrue, 646 F.3d 549, 560 (8th Cir. 2011)).

An ALJ commits harmless error by failing to comment upon lay testimony when: 1) that testimony "does not describe any limitations not already described by the claimant," and 2) "the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay testimony." Id. at 1117 (citing Valentine, 574 F.3d at 694 (holding that an ALJ's germane reasons for rejecting a claimant's testimony are equally germane to similar testimony by lay witnesses)); Lewis, 236 F.3d at 512 (finding that an ALJ "noted arguably germane reasons for dismissing [lay] testimony, even if he did not clearly link his determination to those reasons"); see generally 28 U.S.C.S. § 2111 (codifying the federal harmless error rule for civil cases which requires courts to review cases "without regard to errors or defects which do not affect the substantial rights of the parties").

As noted above, the ALJ found Plaintiff's pain allegations not credible for three reasons: 1) Plaintiff's inconsistent statements regarding her sexual history and whether or not she experienced hallucinations and had suicidal ideations; 2) Plaintiff's noncompliance with prescribed Vicodin for pain; and 3) the lack of support for Plaintiff's alleged limitations in the objective medical record. The first reason does not apply equally well to the lay witnesses since the inconsistent statements go to Plaintiff's credibility for providing truthful information. However, the second and third reasons go to the substance of the alleged limitations and apply equally well to some of the lay witness testimony. The ALJ reasoned that Plaintiff was not in as much pain as she claimed because she failed to take prescribed Vicodin as evidenced by the negative drug test. Tr. 27. The physical limitations described by the lay witnesses based on Plaintiff's alleged incapacitating pain are thus equally discredited. As a result, the ALJ committed harmless error in rejecting the lay witness testimony regarding Plaintiff's ability to: walk, sit, stand, lift, climb stairs, crouch or squat, sleep, grip, and perform household chores.

E.g., compare Tr. 46 (Plaintiff's testimony that her leg and hip pain make walking "six steps" to the bathroom "an exhaustion just to go there"), with Tr. 275 (lay testimony that Plaintiff can walk five to ten feet without stopping to rest); compare Tr. 71 (Plaintiff's testimony that in regards to household chores she can do "[r]eally none anymore"), with Tr. 273 (lay testimony that Plaintiff is in "too much pain" to perform household chores).  Because the testimony of Fero, Kenifick, and Woods fails to add information regarding Plaintiff's alleged pain and limitations beyond what was described by Plaintiff and properly rejected by the ALJ, the ALJ's rejection of the lay testimony regarding pain-based limitations is harmless error.

While the ALJ provided sufficient reason to reject lay testimony regarding Plaintiff's physical symptoms of pain on the basis that these symptoms were unsupported in the medical record and Plaintiff failed to comply with pain medication, the ALJ did not provide sufficient reason to reject lay testimony regarding Plaintiff's psychologically-based limitations because Plaintiff's failure to comply with pain medication undermined the testimony as to physical limitations, not psychological limitations.  The ALJ's reasons for rejecting Plaintiff's testimony do not, therefore, support the rejection of the lay testimony regarding Plaintiff's psychological limitations such as panic attacks, crying spells, and anger control issues.  E.g., Tr. 80 (lay testimony that Plaintiff has daily panic attacks); Tr. 88 (lay testimony that Plaintiff experiences crying spells lasting one to two hours); Tr. 89 (lay testimony that Plaintiff has difficulty controlling her anger).  The ALJ's rejection of this testimony was not harmless because the ALJ was required to consider limitations associated with Plaintiff's mental conditions in making his disability determination.  See 42 U.S.C. § 423(d)(1)(A) (requiring an ALJ to consider whether the claimant is able to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment").  Because the ALJ erred in rejecting the lay

witness testimony based on the conclusory assertion that the testimony was unsupported by the objective medical evidence and because the rejection of the lay witness testimony regarding Plaintiff's mental-health-based limitations was not harmless error, the ALJ erred in rejecting this portion of the lay witness testimony.[1]

III. Medical Testimony

Plaintiff argues the ALJ erred by improperly evaluating the testimony of Dr. Paul Gowen, M.D., and Dr. Givi.  Pl.'s Opening Br. 23, 29.

Social security law recognizes three types of physicians:  1) treating, 2) examining, and 3) nonexamining.  Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant.  Id.; 20 C.F.R. §§ 1527(d)(1)-(2), 416.927(d)(1)-(2).

If the treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight.  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Holohan, 246 F.3d at 1202.  If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the ALJ must still articulate the relevant weight to be given to the opinion under the factors provided for in 20 C.F.R. §§ 1527(d)(2), 416.927(d)(2).  Orn, 495 F.3d at 631.

If the treating physician's opinion is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing" reasons.  Id. at 632.  Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's

---

[1] However, as explained above, the ALJ properly rejected the portion of Woods's testimony provided on the questionnaire.  Any other lay testimony by Woods regarding Plaintiff's mental health limitations was erroneously rejected.

opinion without providing "specific and legitimate reasons" which are supported by substantial evidence in the record.  Id.

A.  Dr. Gowen

On July 6, 2011, Dr. Gowen stated in an attorney-supplied questionnaire that Plaintiff has diagnoses of lower extremity weakness and pain syndrome.  Tr. 731-38 (Medical Opinion Re: Ability to Do Work-Related Activities (Physical) Questionnaire).  Dr. Gowen indicated, by checking a box, that Plaintiff has a "poor" ability to work an eight-hour workday for forty hours a week, but also indicated that Plaintiff was "capable of low stress jobs."  Tr. 733, 734. Regarding functional limitations during an eight-hour workday, Dr. Gowen indicated that Plaintiff could stand or walk for two hours, sit for three hours, lift less than ten pounds occasionally, and could not crouch or stoop.  Tr. 735-36.

The ALJ gave "little weight" to Dr. Gowen's opinion for three reasons: 1) the evidence of record contained no treatment notes from Dr. Gowen; 2) his assessment was inconsistent with treatment notes from other providers, and 3) his assessment was inconsistent with the objective medical evidence.  Tr. 28.  Plaintiff argues that the ALJ erred by not according Dr. Gowen's opinions greater weight since "[i]t is clear that Dr. Gowen is one several treating doctors at NARA from the record."  Pl.'s Reply Br.10 (citing Tr. 687-719).  Defendant counters that the ALJ properly discounted the opinion of Dr. Gowen because "nothing in the record, including the pages Plaintiff cites, shows that Dr. Gowen ever examined or treated Plaintiff."  Def.'s Br. 11 (citing Tr. 687-71).

I agree with Defendant that the ALJ properly evaluated Dr. Gowen's testimony in light of Dr. Gowen's status as neither a treating nor an examining physician.  The records cited by Plaintiff contain no mention of Dr. Gowen other than a July 30, 2010 patient profile from NARA

indicating that he was Plaintiff's primary physician.  Tr. 700.  However, another profile from

August 30, 2010 identifies Dr. Earhart as Plaintiff's primary physician.  Tr. 686.  The only place

in the record where Dr. Gowen's opinion appears is in the attorney-supplied questionnaire. Tr.

731-38.

"[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and

inadequately supported by clinical findings."  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir.

2005); see generally Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (a physician's

opinion "with respect to the existence of an impairment or the ultimate determination of

disability" is not binding on an ALJ).  Consequently, "[o]pinions on a check-box form or form

reports which do not contain significant explanation of the basis for the conclusions . . . may be

accorded little or no weight."  See, e.g., Weltch v. Astrue, No. CV-10-154-HZ, 2011 WL

1135930, at *3 (D. Or. Mar. 28, 2011).

Here, Dr. Gowen's statements on the attorney-supplied questionnaire regarding

Plaintiff's diagnosis of pain syndrome and degree of limitation were brief, conclusory, and

inadequately supported by the clinical findings.  Dr.  Margaret Moore, Ph.D., a medical expert,

reviewed the evidence and determined that Plaintiff has a diagnosis of major depressive disorder

and amphetamine dependence in remission, but stated there is "no formal recognition that

[Plaintiff's condition] is a pain disorder."  Tr. 102-03.  Dr. Richard Alley, M.D., a state agency

physician, opined that in an eight-hour workday Plaintiff could stand or walk for six hours, sit for

six hours, lift up to twenty pounds occasionally and ten pounds frequently, and has no crouching

or stooping limitations.  Tr. 601-02.  Because  Dr. Gowen's opinions are unsubstantiated by the

clinical findings and the record fails to provide sufficient evidence that Dr. Gowen was

Plaintiff's treating or examining physician, the ALJ provided specific and legitimate reasons for

discounting Dr. Gowen's opinions.  See generally Sanders v. Colvin, No. 3:12-CV-01059-HZ, 2013 WL 5376510, at *6 (D. Or. Sept. 24, 2013) (citing SSR 06–03p, 2006 WL 2329939, at *3 (Aug. 9, 2006) (listing factors that an ALJ may use to evaluate the opinions of medical sources including: the longitudinal treating history of the physician, the consistency of the opinion with other evidence, whether the record as a whole supports the opinion, and whether the opinion is thoroughly explained)).

B. Dr. Givi

On March 25, 2008, Plaintiff visited Dr. Givi, an examining clinical psychologist, for a comprehensive psychodiagnostic evaluation.  Tr. 531-37.  Dr. Givi diagnosed Plaintiff with major depressive disorder and amphetamine dependence in remission.  Tr. 537.  Regarding psychological barriers to employment, Dr Givi found that Plaintiff has depression, anxiety, and hygiene problems.  Id.  Dr. Givi also noted that Plaintiff's memory and concentration is "below normal limits."  Tr. 535.  Dr. Givi found that Plaintiff "appears to be semi-independent" in activities of daily living and gave Plaintiff a Global Assessment of Functioning ("GAF") score of 58.  Tr. 537.

The ALJ gave Dr. Givi's opinion "controlling weight" because it was consistent with other evidence.  Tr. 28.  The ALJ noted that Dr. Givi diagnosed Plaintiff with depressive disorder and amphetamine dependence in remission.  Tr. 27 (citing Tr. 102-03 (showing consistency with Dr. Moore's testimony that Plaintiff has no diagnosis for a pain disorder)).  Also, the ALJ noted that the GAF score of 58 indicated "moderate symptoms or moderate impairment."  Tr. 27-28 (citing Tr. 607 (showing consistency with the testimony of state agency physician Dr. Alley, who completed a RFC form stating that Plaintiff is able to preform light work)); see generally DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed., text rev. 2000)

(defining GAF scores in the range of 51 to 60 as "[m]oderate symptoms" such as occasional

panic attacks or "moderate difficulty" in social or occupational functioning).  Based on Dr.

Givi's findings, the ALJ determined that Plaintiff's depressive disorder is a severe impairment

and that Plaintiff does not have a listed impairment.  Tr. 23, 24.

Plaintiff argues that the ALJ erred by failing to include limitations described by Dr. Givi

in his assessment of Plaintiff's RFC despite giving Dr. Givi's reports "significant weight."  Pl.'s

Opening Br. 29.  Defendant counters that the ALJ appropriately "translated" Dr. Givi's

assessment of Plaintiff's limitations in his determination that "Plaintiff was capable of simple,

entry level work with occasional public interaction."  Def.'s Br. 13 (citing Tr. 25, 27-28).  In

support, Defendant cites Stubbs-Danielson v. Astrue, 539 F.3d 1169 (9th Cir. 2008), where the

Ninth Circuit held that the ALJ properly "translated [claimant's] condition, including pace and

mental limitations" into "simple tasks."  Def.'s Br. 13 (citing Stubbs-Danielson, 539 F.3d at

1174).

"It is clear that it is the responsibility of the ALJ, not the claimant's physician, to

determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001)

(citing 20 C.F.R. § 416.946 (codifying the ALJ's responsibility to assess a claimant's RFC)).  "In

assessing the RFC, the ALJ must consider limitations imposed by all of a claimant's

impairments, even those that are not severe; the ALJ must also evaluate 'all of the relevant

medical and other evidence.'"  Catt v. Colvin, No. 3:12-CV-02087-HZ, 2014 WL 98720, at *10

(D. Or. Jan. 8, 2014) (quoting 20 C.F.R. § 404.1545(a)(3); citing SSR 96-8p, 1996 WL 374184,

at *5 (July 2, 1996)).  "When an ALJ rationally interprets the available evidence in forming his

or her opinion, the court will defer to the ALJ's conclusion."  Warn v. Colvin, No. 2:11-CV-2045

KJN, 2013 WL 943411, at *4 (E.D. Cal. Mar. 11, 2013) (citing Batson v. Comm'r, 359 F.3d

1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion.")).

I agree with Defendant that the ALJ rationally interpreted the evidence provided by Dr. Givi in forming his opinion of Plaintiff's RFC.  The ALJ's determination that Plaintiff is capable of "simple, entry level work" is a reasonable work-related functional equivalent to Dr. Givi's opinion that Plaintiff has some physiological barriers to employment, has below normal memory and concentration, functions semi-independently, and has a GAF score of 58.  Accordingly, I find that the ALJ did not err in his evaluation of Dr. Givi's testimony.

IV. Activities of Daily Living

Plaintiff argues the ALJ erred by "not discussing how Plaintiff's ADLs are evidence of [her] inability to perform full-time work."  Pl.'s Opening Br. 28.  I reject the argument for two reasons.  First, as Defendant notes, the ALJ did not discount Plaintiff's credibility, lay witness statements, or medical testimony on this basis.  Second, the argument is better viewed as contending that the ALJ's hypothetical was invalid for failure to contain all of Plaintiff's limitations, an argument she separately makes.  Thus, the ADL argument requires no independent discussion.

V. Hypothetical to Vocational Expert

Plaintiff contends the RFC formulated by the ALJ, and, by extension, the hypothetical questions he posed to the VE were invalid because they did not address all of the limitations described by Plaintiff, the lay witnesses, and Dr. Gowen.  Pl.'s Opening Br. 31-32.  Defendant responds that the RFC and hypothetical questions properly account for all of Plaintiff's limitations supported by the record.  Def.'s Br. 14-15 (citing Stubbs- Danielson, 539 F.3d at

1175-76 (rejecting a claimant's argument that a hypothetical was incomplete when the claimant simply restated her arguments against the RFC findings)).

"The hypothetical an ALJ poses to a vocational expert, which derives [sic] from the RFC, 'must set out all the limitations and restrictions of the particular claimant.'" Valentine, 574 F.3d at 690 (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)); see generally Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) (specifying that hypothetical questions must include all of the claimant's functional limitations, including physical and mental limitations). However, "[a]n ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001). But "[i]f a hypothetical fails to reflect each of the claimant's limitations supported by 'substantial evidence,' the expert's answer has no evidentiary value." Id. at 1167.

Here, the ALJ failed to adequately reflect all of Plaintiff's limitations in the hypotheticals presented to the VE. Because the ALJ erroneously rejected lay testimony regarding Plaintiff's alleged psychological impairments, he failed to include the limitations from these impairments in the VE hypotheticals. See supra Part II (discussing the ALJ's failure to provide legally sufficient reasons to discredit lay witness testimony concerning Plaintiff's mental health impairments); Tr. 106-07 (showing that none of the hypothetical questions posed by the ALJ addressed psychological limitations described by the lay witnesses, other than a hypothetical restricting Plaintiff's RFC to "occasional contact with the public"). Consequently, the VE's testimony has no evidentiary value, and the ALJ's disability determination cannot be sustained.

The decision whether to remand a matter for further proceedings or for an immediate payment of benefits is within the court's discretion. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). "[A] remand for further proceedings is unnecessary if the record is fully developed

and it is clear from the record that the ALJ would be required to award benefits." <u>E.g.</u>, <u>Holohan</u>, 246 F.3d at 1210.  Generally, when reversing an ALJ's decision "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004) (internal quotation marks and citation omitted).  The decision turns on the utility of further proceedings.  <u>Alcock v. Comm'r</u>, No. 1:10-CV-6206-MA, 2011 WL 5825922, at *8 (D. Or. Nov. 16, 2011).  The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed."  <u>Harman</u>, 211 F.3d at 1178.  The court should grant an immediate award when: 1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; 2) there are no outstanding issues that must be resolved before a determination of disability can be made; and 3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.  <u>Id.</u>

Here, there are outstanding issues concerning the credibility of lay witness testimony regarding mental health limitations that must be resolved before a determination can be made that an award is inappropriate.  In this case, the ALJ must: 1) perform a complete credibility analysis of lay witness testimony and, if necessary, provide germane and specific reasons for discrediting testimony or, under <u>Glover</u>, provide sufficient discussion to reject testimony unsupported by the medical evidence; and 2) if necessary, reassess Plaintiff's RFC and propose appropriate hypotheticals to the VE that include all of Plaintiff's limitations.  Given that these issues remain, I reverse the ALJ's decision, and remand the case for further proceedings consistent with this opinion.

/ / /

/ / /

23 - OPINION & ORDER

CONCLUSION

The Commissioner's decision is reversed and remanded for additional proceedings.

IT IS SO ORDERED.

Dated this _____ day of _____, 2014

MARCO A. HERNANDEZ
United States District Judge